805 F.2d 1037
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Franklin WILLIAMS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1854.
 United States Court of Appeals, Sixth Circuit.
 Oct. 27, 1986.
 
 Before WELLFORD, MILBURN, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Franklin Williams filed an application for Supplemental Security Income on June 8, 1983. The claim was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ), and on September 17, 1984, the ALJ denied the claim for benefits. The Appeals Council declined to review the ALJ's decision.
 
 
 2
 Plaintiff commenced this action in the United States District Court for the Eastern District of Michigan, seeking a review of the Secretary's final decision pursuant to 42 U.S.C. Sec. 405(g) (1982). On August 19, 1985, Magistrate Paul J. Komives issued a report and recommendation recommending that the Secretary's motion for summary judgment be granted. On September 17, 1985, Judge Philip Pratt adopted the findings and recommendations of the magistrate, and granted summary judgment to the Secretary. This appeal followed.
 
 I.
 
 3
 Plaintiff was born on February 11, 1936, and was forty-eight years old at the time of the administrative hearing. He completed the eleventh grade, but he has had no further vocational schooling. He is able to read and write. He does not drive. Plaintiff last worked in 1969 as a material handler for the Chrysler Corporation.
 
 
 4
 Plaintiff claimed that he is unable to work because of seizures and back, chest, and neck pains. His seizure disorder allegedly began at least eighteen years ago. Plaintiff testified that the seizures occur frequently if irregularly. He takes Dilantin to control the seizures.
 
 
 5
 Plaintiff described his back pain as feeling "like someone is sitting on my shoulders." The pain is located in his upper and lower back, and he stated that it is "there all the time." However, he also testified that he is free of pain after he takes his medicine, and that a cup of hot tea or coffee also gives him relief. He asserts that his back pain began in 1966, but he never has been hospitalized for the problem.
 
 
 6
 Plaintiff also complains about his chest pains. As in the case of his back pain, the chest pain is relieved temporarily by medication. Plaintiff described his appetite as poor and stated that he does "not necessarily" sleep well at night. He claimed that he lies down during the day because his medication makes him sleepy.
 
 
 7
 Plaintiff has been treated by Dr. Jasper McLaurin for many years. In his July 6, 1983 report, Dr. McLaurin reported a history of seizures since March 1973. Generally his reports indicate "the seizures are well controlled on medication," and over considerable periods there is no reflection of any seizure at all.
 
 
 8
 The record reveals no confirmation of Dr. McLaurin's diagnosis concerning Williams' back and chest pain through electromyographic examination or other objective testing. A September 12, 1983 x-ray of the lumbosacral spine was interpreted as revealing "minimal degenerative osteoarthritic changes." No fracture of spondylolisthesis was noted.
 
 
 9
 In addition to the back abnormality, Dr. McLaurin also diagnosed osteoma of the right frontal sinus, malnutrition, emphysematous chest, peripheral facial palsy, cirrhosis of the liver and recurrent chronic pancreatitis. He related plaintiff's seizures, however, to posttraumatic grand mal epilepsy. Plaintiff also has been treated by Dr. Walter Grady who appears to have rendered treatment only for the complaints relating to the chest, back, and arm. Dr. Grady diagnosed thoracic myositis and recommended that plaintiff be limited to light work. A back x-ray apparently at Dr. Grady's request revealed a "normal thoracic spine."
 
 
 10
 Dr. L. Banerji examined plaintiff on September 12, 1983, at the request of the Disability Determination Service. He opined that the chest pain is not cardiac in origin, and he suggested that it may be due to fibromyositis. Dr. Banerji concluded that plaintiff's right shoulder joint pain is possibly due to periarthritis. He detected no limitation of movement in the right shoulder and noted that plaintiff's grip was good in the right hand. Although plaintiff related complaints of low back pain, Dr. Banerji found no limitation of movement of the lumbar spine, and upon clinical examination noted that there was no difficulty in walking on the tip toes and heels in a straight line. Dr. Banerji also had a pulmonary function test performed, but he was skeptical of the results. Dr. Banerji also noted that plaintiff was uncooperative during the test and he doubted whether maximum effort had been exerted. The chest x-ray revealed no pneumonic infiltrate consolidation, effusion or pulmonary congestion.
 
 
 11
 Dr. T. Abbassi performed a psychiatric examination on December 30, 1983, at the request of the Disability Determination Service. Dr. Abbassi concluded that undifferentiated, chronic schizophrenia would have to be ruled out. He opined that the prognosis was unpredictable. Dr. Abbassi's report also cast doubt on plaintiff's credibility and brought into question the value of his examination.
 
 
 12
 Dr. I. D'Sa's report of May 17, 1982, contained a diagnosis of epilepsy, controlled hypertension and indicated that cirrhosis of the liver would have to be ruled out. He characterized plaintiff's impairments as "stable" and opined that plaintiff could engage in limited employment as long as he did not work around machinery or in any hazardous environment.
 
 
 13
 Richard Humanic testified as a vocational expert at the administrative hearing. Humanic testified that if all of plaintiff's testimony was credited, he could not engage in substantial, gainful activity. When asked to assume that certain lesser limitations were present, including the presence of seizures once or twice per week occasionally, Humanic testified that 2,500 jobs existed in metropolitan Detroit and 5,000 throughout Michigan that plaintiff would be capable of performing. Humanic testified that an individual with the lesser limitations described could perform a number of jobs. Plaintiff's counsel did not cross-examine the vocational expert.
 
 II.
 
 14
 The ALJ found no disability because he found plaintiff's testimony for "pain and dysfunction" was not credible and because of the vocational expert's testimony that jobs plaintiff could perform existed in significant numbers.[1] Plaintiff contends that the ALJ erred because he asked the vocational expert to assess the availability of jobs for plaintiff based on erroneous assumptions. The hypothetical the ALJ gave the vocational expert included the assumption that the plaintiff's medications did not cause him to "lie down or be recumbent at all during the course of a workday." Plaintiff points out that this assumption is inconsistent with his testimony that his medications force him to sleep during the day.
 
 
 15
 Although the ALJ did not specifically refer to plaintiff's claim he needs to sleep during the day, the ALJ did discount plaintiff's credibility because his testimony was not supported by the evidence in the record. The evidence that undercuts plaintiff's testimony includes the clinical notes of the treating doctor, and Dr. Banerji's report, which noted plaintiff was uncooperative and concluded plaintiff's breathing test suggested he could perform sedentary work. We agree essentially for the reasons stated in the thorough report of the magistrate that substantial evidence supports the ALJ's conclusion that plaintiff could perform sedentary work as of June 8, 1983. The ALJ was also acting within his reasonable discretion in discounting plaintiff's credibility about the extent of his physical ailments.
 
 
 16
 Accordingly, we AFFIRM.
 
 
 
 [1]
 We agree with the ALJ's determination that the plaintiff's disorder did not meet or equal the Listing of Impairments. See 20 C.F.R. Part 404, Subpart P, App. 1, Sec. 11.02 (1985) (requires seizures to occur more frequently than once a month)